## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PPE CASINO RESORTS MARYLAND,    &ast;
LLC, d/b/a/ MARYLAND LIVE! CASINO  &ast;
7002 Arundel Mills Circle    &ast;
Hanover, MD 21076,    &ast;
   &ast;
      Plaintiff,    &ast;
   &ast;
v.    &ast;    Civil Action No. _____
   &ast;
HELENA WONG    &ast;
628 Alberta Drive    &ast;
Brigantine, NJ 08203,    &ast;
   &ast;
      Defendant.    &ast;
_____/

## VERIFIED COMPLAINT AND REQUEST FOR
## TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, PPE Casino Resorts Maryland, LLC, d/b/a Maryland Live! Casino (referred to as "Plaintiff" or "Maryland Live!" or "Company") states as follows by way of complaint against Helena Wong ("Wong"):

### INTRODUCTION

Helena Wong, a former VIP Casino Host at Maryland Live!, who now works as the Multicultural Executive Host at Maryland Live!'s principal competitor, CBAC Gaming, LLC, d/b/a/ Horseshoe Baltimore Casino ("Horseshoe"), misappropriated sensitive confidential and proprietary information from Maryland Live! while employed there, including, but not limited to, a list containing the names and contact information of Maryland Live!'s most valuable customers. On June 13, 2014, Maryland Live! sent Wong a cease and desist letter and asked her to return or destroy all Maryland Live! property. Wong ignored this request. Instead, Wong has solicited Maryland Live!'s most valuable customers and encouraged them to gamble at

Horseshoe. Maryland Live! is aware of Wong's solicitation of valuable customers that occurred as recently as this past Wednesday afternoon (August 20, 2014). Wong knew that she was engaging in wrongdoing when she wrote this email because the <u>very next day</u> (August 21, 2014) she wrote another email to the same valuable customers stating, "PLEASE DO NOT repeat or show" (emphasis original) her August 20 email to Maryland Live! personnel. This email demonstrates that Wong is aware that she is acting unlawfully.

Maryland Live! has every reason to believe that Wong is aggressively targeting its most valued customers, whom Wong would not have met, or have knowledge of, without her conversion of Maryland Live! customer lists. Because Wong ignored the Company's cease and desist letter, Maryland Live! has no other option but to seek judicial intervention to prevent this unlawful conduct, and irreparable harm. Maryland Live! requests an immediate hearing on this matter today (August 22, 2014). Horseshoe opens its doors **next Tuesday at 9:00 p.m.** It can be reasonably presumed that Wong's solicitations will continue through the weekend and into early next week. Maryland Live!'s ability to maintain its proprietary relationship with its most valued customers is at stake. The loss of these customers will result in irreparable harm to Maryland Live!. An injunction should issue to prevent Defendant from engaging in this improper behavior.

### PARTIES AND JURISDICTION

1.      Plaintiff Maryland Live! is a full service casino located at 7002 Arundel Mills Circle, Hanover, Maryland 21076.

2.      Defendant Wong is domiciled in the state of New Jersey and maintains a residence at 628 Alberta Drive Brigantine, New Jersey 08203, and a New Jersey drivers license.

(Exhibit 1, Copy of Helena Wong Employment Application; Exhibit 2, Copy of Helena Wong I-9 Form).

3.     Jurisdiction and venue is proper pursuant to 28 U.S.C. § 1332.

4.     The amount in controversy exceeds $75,000.

## FACTS RELATING TO ALL COUNTS

5.     Maryland Live! is a full service Casino in Anne Arundel County Maryland with 4,200 slot machines, 189 table games, seven restaurants, a concert venue, shopping, and other amenities.  (Exhibit 3, Affidavit of Howard Weinstein)

6.     Maryland Live!'s industry is highly competitive.  Within 250 miles, Maryland Live! competes against at least 15 other Casinos, all of which offer similar gaming and amenities. (Id.)

7.     The State of Maryland has awarded a Casino license to Horseshoe for a Casino in downtown Baltimore (1525 Russell Street, 21230).  That Casino is located within close geographic proximity to Maryland Live!. (Id.)

8.     In order to remain viable in this competitive environment Maryland Live! developed a highly confidential and proprietary system of identifying potential customers, soliciting such customers to gamble at Maryland Live!, tracking how much each customer gambles, and then rebating the customer with "comps" in the form of entertainment, meals, transportation, gifts, etc. so as to retain that customer's business.  That program is called "Live! Rewards." (Id.)

9.     Within this Rewards program, customers are placed into different tiers based upon the amount of money they wager.  Maryland Live! has a five tier card program – the top two levels are high-end customers – the Chairman's Club and the Black Card. (Id.)

3

10.     The Casino has at least 1,000 customers who are members of these tiers combined. (Id.)

11.     Given the time and expense associated with identifying these 1,000 customers as well as Maryland Live!'s development of its unique and proprietary rewards program for these customers, the combination of the customers identities along with the reward program has independent economic value far in excess of $75,000. (Id.)

12.     In order to ensure that these customers have all their customer service needs met, and that comps and rebates are properly remitted to customers, Maryland Live! employs a full-time staff which is exclusively devoted to Player Development.  This staff includes a Director of Player Development, a Player Development Manager, Player Development Executives, International Player Development Managers and Executives, Casino Hosts and International Casino Hosts, and VIP Casino Hosts. (Id.)

13.     Maryland Live! carefully guards all its information pertaining to the Live! Rewards program, including the list of Chairman Club and Black Card members; their contact information; the precise rebate and comping methodology; and the solicitations that each customer is provided. (Id.)

14.     This information can be obtained only through specific computers located in certain offices at Maryland Live!.  An employee must be a member of the Player Development Team to even access the office where the computer systems are located.  From there, only authorized employees can access this confidential and proprietary data on the computer. (Id.)

15.     In her position as a VIP Casino Host, Wong had access to this office and computer system. (Id.)

16.     Wong began working for Maryland Live! as a VIP Casino Host on January 20, 2014. (Id.)

17.     Wong had no prior experience working as a casino host.  (Ex. 1)

18.     Maryland Live!'s  Employee Handbook contains a "Confidentiality of Business Information" policy.  The Non-Disclosure section of this policy states:

> Team Members acknowledge that Maryland Live! Casino may, in the course of the Team Member's employment, intentionally or unintentionally, provide Team Member access to Company's confidential or proprietary information, such as trade secrets, customer lists, business and marketing plans, financial information, and other similar confidential information related to the business of the Company, including access to Maryland Live! Casino's Employment Manual.   Team Members agree to retain all such sensitive information as confidential and may not use such confidential information on his or her own behalf or disclose such confidential information to any third party during or at any time after the term of the Team Member's employment, unless you have been granted prior authorization from Executive Management.

(Exhibit 4, Confidentiality of Business Information Policy)

19.     On January 14, 2014, Wong signed an acknowledgment affirming that she read the Employee Handbook, and agreed to abide by all the policies contained within it, including the Confidentiality of Business Information policy.  (Exhibit 5, Helena Wong Signed Employee Acknowledgment).

20.     As a VIP Casino Host, Wong was expected to provide customer service to the Chairman Club and Black Card customers, including but not limited to, arranging for entertainment and transportation of customers and assisting them with all customer service related issues on the casino floor.  (Ex. 3, Weinstein Affidavit)

21.     On or about June 9, 2014, Wong voluntarily resigned from her position as a VIP Casino Host at Maryland Live!.  (Id.)

22.     Prior to her resignation, upon information and belief, Wong misappropriated sensitive confidential and proprietary information from Maryland Live! including, but not

limited to, the name and contact information for its Chairman Club and Black Card players.  This information is not publicly available and has an independent economic value in excess of $75,000.

23.     On or about June 13, 2014, Maryland Live! wrote to Ms. Wong reminding her of the obligation to maintain confidential business information, as set forth in the Employee Handbook.  (Exhibit 6, Letter from Maryland Live! to Helena Wong).

24.     The Company also stated that if Wong was using "customer lists or other Maryland Live! confidential and proprietary information" that such conduct would "violate the commitments you made while employed at Maryland Live! Casino."  (Id.)

25.     Maryland Live! requested that Wong return all information, delete any electronic data, and cease any efforts to use confidential and proprietary information to solicit customers on Maryland Live! customer lists.  (Id.)

26.     Wong never responded to this letter.  (Ex. 4, Weinstein Affidavit)

27.     On or about July 14, 2014, Wong was hired as the Multicultural Executive Casino Host at Horseshoe, Maryland Live's principal competitor.  (Id.)

28.     Shortly thereafter, Wong used the highly confidential and proprietary information that she unlawfully misappropriated from Maryland Live! to contact its highly valued Chairman Club and Black Card members and solicited these customers to gamble at Horseshoe.

29.     But for her prior employment at Maryland Live! and misappropriation of its confidential customer list, Wong would have had no interaction or knowledge whatsoever with any of these individuals.

30.     On August 20, 2014, Wong sent an email from her Horseshoe email address (hwong2@caesars.com) to a list of masked recipients (on the BCC line) that included at least individuals on Maryland Live!'s Chairman Club and Black Card list, stating:

> Hi all!!   You might all remember from Maryland Live Casino but I am now with Horseshoe Casino in Baltimore.  Our Grand Opening will be August 26th, 2014 at 9pm.
>
> If any of you would like to visit the property or come for a night or two, please contact me ahead of time so that I can set it up for you.
>
> Look forward to seeing you all!!
>
> Thank you,

(Exhibit 7, August 20, 2014 email from Helena Wong).

31.     Customer A is a Black-Card player at Maryland Live!.

32.     This August 20, 2014 email was received by, among others, Customer A.

33.     Customer A has not gambled at a property owned by Horseshoe's parent company, Caesar's Entertainment, in more than a year, and has only the lowest level player's reward card with Caesar's.

34.     The mere identification of Customer A, his level of gaming, and comp rewards is confidential and proprietary business information that was developed at great expense.

35.     Wong had no interaction with Customer A when she worked at Maryland Live! and would not have knowledge of his email address and contact information unless she misappropriated the information from Maryland Live! prior to her departure.

36.     On information and belief, other masked recipients of the August 20, 2014 email are also Black-Card and Chairman club members, whose information Wong would not have had access to, but-for her employment with Maryland Live!.

37.     On August 21, 2014, Wong sent a follow-up email to her August 20 email (Exhibit 6) from her Horseshoe email address (hwong2@caesars.com) to the same masked recipients that included at least individuals on Maryland Live!'s Chairman Club and Black Card list, stating:

> PS….PLEASE DO NOT repeat or show this email to any of MD Live's personnel.  This is a confidential email between us.
>
> Thank you for your cooperation!!

(Exhibit 8, August 21, 2014 email from Helena Wong) (emphasis original).

38.     This August 21, 2014 email was received by, among others, Customer A.

39.     Horseshoe opens its doors on August 26, 2014 at 9:00 p.m.  (Ex. 3, Weinstein Affidavit)

40.     As evidenced by her August 21, 2014 email, Defendant's acts were willful and with knowledge of the harm that they would cause to Maryland Live! and with the intent to cause such harm.  Wong's actions deliberately continued even after the Company warned her to cease and desist.

41.     Without judicial intervention, Defendant's actions will continue and cause Maryland Live! the loss of its highly valued Black-Card and Chairman Club players, which will result in at economic losses in excess of $75,000 and irreparable harm.  (Id.)

**COUNT ONE**
**(Misappropriation and/or Violation of the**
**Maryland Uniform Trade Secrets Act)**

42.     Maryland Live! repeats and incorporates by reference the allegations in paragraphs 1 through 40 as if set forth fully herein.

43.     Under the Maryland Uniform Trade Secrets Act, the term "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

MD. CODE ANN. COMM. LAW § 11-1201 (e).

44.     Maryland Live!'s customer lists, customer specifications, identification of potential customers, customer tracking systems, and other documents and information to which Wong was given access during her employment are trade secrets because this information derives independent economic value from not being generally known to or reasonably ascertainable by proper means, and other persons can obtain economic value from its disclosure or use.

45.     Maryland Live! takes appropriate measures to protect the confidentiality these trade secrets, including:

- Requiring appropriate personnel to execute Confidentiality Agreements;
- Utilizing User IDs and passwords for computer access; and
- Permitting only certain employees access to confidential information maintained on the Company's computer systems.

46.     Wong misappropriated Maryland Live!'s trade secrets without authorization and is using them to advance her interests to the detriment of Maryland Live!.

47.     Defendant's actions violate the Maryland Uniform Trade Secrets Act, MD. CODE ANN., COMM. LAW §§ 11-1201 *et seq.*

9

48.     Unless enjoined, Maryland Live! will be irreparably damaged.  Maryland Live! is entitled to damages as a result of Defendant's violations of the law, including its actual losses, losses measured by the unjust enrichment caused by the misappropriation, exemplary damages, injunctive relief and attorneys' fees.

## COUNT TWO
### (Tortious Interference With Economic Relations)

49.     Maryland Live! repeats and incorporates by reference the allegations in paragraphs 1 through 47 as if set forth fully herein.

50.     By using Maryland Live!'s protected trade secrets for her own benefit in violation of the Maryland Uniform Trade Secrets Act, without justification or excuse, Defendant has unlawfully and tortiously interfered with Maryland Live!'s business relations and prospective business relations with highly valued customers.

51.     Maryland Live! has suffered financial injury by Defendant's tortious interference with its business relations and prospective business relations with customers.

52.     Defendant has acted with intent to harm Maryland Live!, or with conscious indifference to the consequences of her actions.

53.     Maryland Live! has been damaged by Defendant's actions.

## COUNT THREE
### (Conversion)

54.     Maryland Live! repeats and incorporates by reference the allegations in paragraphs 1 through 52 as if set forth fully herein.

55.     By appropriating, without authorization, Maryland Live!'s property, including but not limited to Maryland Live!'s confidential and proprietary customer lists, Wong has engaged in conversion.

56.     Wong acted with intent to harm Maryland Live! or with conscious indifference to the consequences of her actions.

57.     Wong's actions were wrongful and without privilege or lawful justification and have resulted in damage to Maryland Live!, in an amount to be determined at trial.

58.     As a consequence of this misconduct, Maryland Live! has been damaged.

## COUNT FOUR
### (Breach of Confidentiality)

59.     Maryland Live! repeats and incorporates by reference the allegations in paragraphs 1 through 57 as if set forth fully herein.

60.     For purposes of maintaining confidential business information, the Maryland Live! Employee Handbook and its Confidentiality of Business Information policy constituted a valid and binding contract, which was supported by fair and adequate consideration.  (Exhs. 4 & 5).

61.     Wong breached confidentiality by misappropriating the Company's confidential and proprietary information.

62.     Wong acted with intent to harm Maryland Live! or with conscious indifference to the consequences of her actions.

63.     Wong's actions were wrongful and without privilege or lawful justification and have resulted in damage to Maryland Live!, in an amount to be determined at trial.

64.     As a consequence of this misconduct, Maryland Live! has been damaged.

65.     Plaintiff has fully performed its contractual obligations to Wong and the conditions precedent, if any, to Plaintiff's right to recover under the Agreement have been performed, satisfied, excused, or waived.

## COUNT FIVE
### (Breach of Fiduciary Duty of Loyalty)

66.     Maryland Live! repeats and incorporates by reference the allegations in paragraphs 1 through 64 as if set forth fully herein.

67.     While Wong was a VIP Casino Host at Maryland Live!, Wong owed the Company a duty to act solely for the benefit of Maryland Live! in all matters within the scope of her employment.

68.     Wong breached this duty by engaging in improper acts while still employed by Maryland Live! which included, but were not limited to, misappropriating confidential and proprietary documents from Maryland Live! in the hope of diverting business and business opportunities from Maryland Live! to herself.

69.     Wong acted with intent to harm Maryland Live! or with conscious indifference to the consequences of her actions.

70.     Wong's actions were wrongful and without privilege or lawful justification and have resulted in damage to Maryland Live!, in an amount to be determined at trial.

71.     As a consequence of this misconduct, Maryland Live! has been damaged.

## COUNT SIX
### (Injunctive Relief)

72.     Maryland Live! re-alleges and incorporates by reference the allegations in paragraphs 1-70 as if set forth fully herein.

73.     On the basis of the foregoing, Maryland Live! is entitled to temporary, preliminary and permanent injunctive relief, including the issuance of an order enjoining Wong from directly or indirectly, alone or in concert with others, engaging in the following activities:

- Using or disclosing in her new position at Horseshoe any confidential or proprietary information obtained from Maryland Live!, including but not limited to customer lists; and

- For a period of (2) years from the date of this injunction, contacting or soliciting the business of any Maryland Live! customers, including but not limited to, Chairman Club or Black Card Members, that Wong did not know previous to her employment at Maryland Live!.

## PRAYER FOR RELIEF

Maryland Live! has suffered and continues to suffer, immediate, irreparable, and substantial injury and damage to its business, goodwill and customer relations as the result of the conduct of Defendant. As a result, Maryland Live! has no plain, adequate or complete remedy at law, and this action, with Maryland Live's! request for preliminary and permanent injunctive relief, is its only means of securing an adequate remedy.

WHEREFORE, Maryland Live! respectfully further prays that this Court advance this case on the docket, order a speedy hearing at the earliest practicable date on the temporary, preliminary and permanent injunction sought by Plaintiff, cause this action to be expedited, and upon such hearing further order as follows:

A.      An Injunction enjoining Wong from directly or indirectly, alone or in concert with others:

- Using or disclosing in her new position at Horseshoe any confidential or proprietary information obtained from Maryland Live!, including but not limited to customer lists; and

- For a period of (2) years from the date of this injunction, contacting or soliciting the business of any Maryland Live! customers, including but not limited to, Chairman Club or Black Card Members, that Wong did not know previous to her employment at Maryland Live!.

B.      An Order requiring that Defendant return to Maryland Live! all originals and copies of Maryland Live! property and documents that may be in her possession, including but not limited

to any customer list, in whatever form, containing Maryland Live! trade secrets and confidential information;

C.      Order Wong to produce her personal computer(s) and cell phone so that Maryland Live! can utilize, at Wong's expense, a forensics computer expert to analyze and to wipe the computer and cell phone clean of all Maryland Live's! Confidential Information;

D.      Order an accounting of all income, earnings, profits, and other benefits arising from Wong's usurpation of Maryland Live! business, both personally and through Horseshoe;

E.      Award Maryland Live! compensatory damages against Defendant in the amount to be determined;

F.      Award Maryland Live! punitive damages against Defendant in the amount to be determined;

G.      Award Maryland Live's! reasonable attorneys' fees; and

H.      Such other relief deemed appropriate by the Court.

Respectfully submitted,

Stephen D. Shawe (Bar No, 01776)
Mark J. Swerdlin (Bar No. 04927)
Bryan M. O'Keefe (Bar No. 29813)
SHAWE & ROSENTHAL, LLP
One South St., Suite 1800
Baltimore, MD  21202
Telephone:  (410) 752-1040
Facsimile:  (410) 752-8861
*Counsel for Plaintiff*

August 22, 2014

424159_1